IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KIMBERLY C.,                            )
                                        )
                 Plaintiff,             )    CIVIL ACTION
                                        )
v.                                      )    No. 19-1268-JAR
                                        )
ANDREW M. SAUL,                         )
Commissioner of Social Security,        )
                                        )
                 Defendant.             )
_____ )

## MEMORANDUM AND ORDER

Kimberly C. seeks review of the final decision by the Commissioner of Social Security ("Commissioner") denying her disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 401–434.[1] Plaintiff asserts that substantial evidence does not support the decision because the Administrative Law Judge ("ALJ") failed to adequately explain why her spinal condition did not equal those in the designated list of severe impairments and why he discounted certain medical evidence in calculating her residual functional capacity ("RFC").  For reasons stated below, the Court reverses the Commissioner's decision and remands for further proceedings.

### I.    Procedural History

On January 13, 2014, plaintiff applied for disability insurance benefits and supplemental security insurance, alleging a disability onset date of June 7, 2013.[2]  Plaintiff claimed that she

---

[1] Complaint (Doc. #1) filed October 2, 2019.

[2] Transcript Of Admin. Rec. ("Tr.") (Doc. #14) filed December 4, 2019 at 74, 89, 141, 164.

-1-

suffered from anxiety, depression, shoulder impingement and pain in her shoulder, neck and back.[3] The Commissioner denied plaintiff's applications on October 9, 2014, and again on upon reconsideration on March 23, 2015.[4]

On April 17, 2015, plaintiff requested a hearing and on May 18, 2016, she testified before an ALJ.[5] On July 8, 2016, the ALJ found that plaintiff was not disabled.[6] On June 16, 2017, the Appeals Council denied plaintiff's request to reconsider the ALJ decision, which made it the Commissioner's final decision.[7] Plaintiff then appealed the Commissioner's decision to this Court, and on August 29, 2018, Judge John W. Lungstrum reversed and remanded.[8]

On April 2, 2019, the ALJ conducted a hearing on remand.[9] On June 12, 2019, the ALJ again found that plaintiff was not disabled.[10] On October 2, 2019, pursuant to 20 C.F.R. § 422.210(a), plaintiff filed her complaint, which asks the Court to reverse the ALJ decision and find that she is disabled under the SSA or, in the alternative, remand the case for further proceedings.[11] Because plaintiff has exhausted all available administrative remedies, the Court has jurisdiction to review the decision.

## II.  Standard of Review

Pursuant to 42 U.S.C. § 405(g), the Court determines whether substantial evidence supports the Commissioner's decision.[12] Under this standard, the Court looks to an existing administrative

---

[3] *Id.* at 74.
[4] *Id.* at 103–104, 187–88.
[5] *Id.* at 22–33.
[6] *Id.*
[7] *Id.* at 1.
[8] *Id.* at 1099.
[9] *Id.* at 877–92.
[10] *Id.*
[11] Complaint (Doc. #1).  Pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, plaintiff also seeks attorney's fees on the grounds that the Commissioner's decision was not substantially justified.  *Id.* at 2.  In their pleadings, the parties do not mention plaintiff's claim for attorney's fees.  Therefore, the Court does not address the issue at this time.
[12] *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019).

-3-

record and asks whether it contains sufficient evidence to support the Commissioner's factual determinations.[13]  As the Supreme Court recently explained, this "threshold for such evidentiary sufficiency is not high."[14]  Substantial evidence is "more than a mere scintilla," which means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[15]

### III.     Legal Standards and Analytical Framework

Under the SSA, plaintiff is disabled if she has a severe physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least 12 months.[16]  To determine whether plaintiff satisfies this standard, the Commissioner uses a five-step sequential process.[17]  In the first three steps, the Commissioner determines whether (1) plaintiff has engaged in substantial gainful activity since the alleged onset of the disability, (2) plaintiff has a severe impairment or combination of impairments and (3) the severity of her impairment is equivalent to those on a designated list of impairments.[18]  If plaintiff satisfies all three steps, she is disabled for purposes of the SSA.[19]

If plaintiff satisfies steps one and two but not three, the analysis proceeds to step four.[20]  At step four, the Commissioner determines whether plaintiff's impairments prevent her from doing work that she performed in the past.[21]  To make this determination, the Commissioner must make specific factual findings regarding plaintiff's abilities, including her RFC.[22]  An RFC consists of

---

[13] *Id.* at 1154.
[14] *Id.*
[15] *Id.* (citations omitted).
[16] 42 U.S.C. § 423(d)(1)(A).
[17] 20 C.F.R § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (citation omitted).
[18] 20 C.F.R. § 404.1520(a)(4)(i)–(iii); *see Wilson*, 602 F.3d at 1139.
[19] *Wilson*, 602 F.3d at 1139.
[20] *Id.*
[21] *Id.*; 20 C.F.R. § 404.1520(f).
[22] *See Winfrey v. Chater*, 92 F.3d 1017, 1023-25 (10th Cir. 1996).

those activities that plaintiff can still perform on a regular and continuing basis despite her limitations.[23]

If plaintiff satisfies step four by showing that she is incapable of performing past relevant work, the Commissioner proceeds to step five.[24] At this final step, the burden shifts to the Commissioner to show that considering plaintiff's RFC, along with other factors such as age, education and work experience, she can perform other work in the national economy.[25] If the Commissioner shows that plaintiff is able to do so, she is not disabled for purposes of the SSA.[26]

Here, the ALJ determined that plaintiff satisfied the first two steps with the following impairments: degenerative joint disease of the right shoulder, disorder of the spine, depression and anxiety.[27] The ALJ concluded, however, that plaintiff did not satisfy step three because she did not have an impairment or combination of impairments which met or equaled those on the designated list.[28] Accordingly, the ALJ proceeded to step four, where he found that plaintiff had the following RFC:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and or carry 20 pounds occasionally and 10 pounds frequently. She can walk or stand six hours out of an eight-hour workday. She can sit for six hours out of an eight-hour workday. The claimant can occasionally climb stairs, but never climb ropes, scaffolds or ladders. She can occasionally balance, stoop, crouch, kneel or crawl and occasionally push and pull. She is limited to frequent reaching with the right upper extremity, but no overhead reaching with the right upper extremity. She must avoid prolonged exposure to vibrating machinery. She is limited to simple, routine repetitive tasks with occasional interaction with co-workers and occasional interaction with the general public. She retains the ability to adapt to changes in the work place on a basic level.[29]

---

[23] *Stewart v. Colvin*, No. 14-1027-EFM, 2014 WL 5410240, at *6 (D. Kan. Oct. 22, 2014).
[24] *Wilson*, 602 F.3d at 1139.
[25] *Id.*
[26] *Id.*
[27] Tr. 881.
[28] *Id.*
[29] *Id.* at 883.

Given plaintiff's RFC, the ALJ determined that she could not perform any past relevant work.[30] The ALJ then determined at step five that considering plaintiff's RFC, age, education and work experience, she could perform a significant number of jobs in the national economy.[31] Therefore, the ALJ concluded that plaintiff was not disabled for purposes of the SSA.[32]

**Analysis**

Plaintiff asserts that substantial evidence does not support the ALJ decision because (1) at step three, he failed to consider medical evidence which showed that she had an impairment or combination of impairments which met or equaled those on the designated list and (2) at step four, he failed to adequately explain why he discounted certain medical opinions in calculating her RFC.

**I.    Step Three**

The ALJ determined that plaintiff did not satisfy step three because her impairments did not meet and equal those from the designated list of severe impairments.[33] As the Court explained above, at step three, the ALJ must determine whether plaintiff's impairment is "equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity."[34] To satisfy this standard, plaintiff must present evidence which shows that she "satisfies all the criteria for the relevant listing."[35]

In explaining whether plaintiff satisfied this standard, the ALJ is not required to discuss every piece of evidence, but "the record must demonstrate that the ALJ considered all of the

---

[30] *Id.* at 891.
[31] *Id.*
[32] *Id.*
[33] *Id.* at 881.
[34] *Vigil v. Comm'r, SSA*, 755 F. App'x 816, 819 (10th Cir. 2018) (citation omitted).
[35] *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

evidence."[36]  Accordingly, in addition to discussing the evidence which supports his decision, the ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."[37]  If the ALJ fails to specifically weigh the evidence while discussing his findings, the Court "cannot assess whether relevant evidence adequately supports the ALJ's conclusion that [plaintiff's] impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion."[38]

Here, plaintiff asserts that the ALJ erred when he determined that her impairments did not meet the requirements of Listing 1.04A, which governs spinal disorders.  Under Listing 1.04A, plaintiff must prove that she has a disorder of the spine or spinal cord with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).[39]

The ALJ determined that plaintiff did not satisfy Listing 1.04A because "there is no evidence of nerve root compression characterized by a neuro-anatomic distribution of pain, motor loss accompanied by sensory or reflect loss; or spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication."[40]

This analysis is inadequate.  Plaintiff presented a considerable amount of medical evidence to support each of the requirements under 1.04A.[41]  Specifically, the record contains ample

---

[36] *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996); *see Fuller v. Astrue*, 766 F. Supp. 2d 1149, 1154 (D. Kan. 2011) (record must demonstrate that ALJ "*considered* all of the evidence, but he is not required to *discuss* every piece of relevant evidence) (emphasis in original).
[37] *Clifton*, 79 F.3d at 1010.
[38] *Id.*
[39] 20 C.F.R. § Pt. 404, Subpt. P, App. 1.
[40] Tr. 881–82.
[41] *See* Brief of The Commissioner (Doc. #18) filed March 19, 2020 at 2 (conceding that record contains evidence supporting several requirements under 1.04A).

evidence of a limited range of motion in her neck and back,[42] sensory loss in her neck and lower back,[43] motor loss and muscle weakness[44] and nerve root compression characterized by neuro-anatomic distribution of pain.[45]  However, in concluding that plaintiff did not satisfy the requirements under 1.04A, the ALJ did not mention any evidence, let alone identify the evidence on which he relied and explain the probative evidence that he rejected.[46]  He instead concluded in one sentence that plaintiff did not satisfy any of the requirements.  Accordingly, the Court "cannot assess whether relevant evidence adequately supports the ALJ's conclusion that [plaintiff's] impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion."[47]

The Commissioner argues that even if the ALJ's discussion was deficient, "remand for further discussion of Listing 1.04 would serve no useful purpose, because the evidence shows that Plaintiff's condition was not of listing-level."[48]  In particular, the Commissioner asserts that the record does not contain enough evidence to satisfy Listing 1.04's "motor loss" requirement, and that plaintiff's evidence of motor loss largely relates to her shoulder—not her spine.  In support, he cites Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005), which held that "an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment."

The Commissioner's reliance on Fischer-Ross is misplaced.  The Tenth Circuit explained that remand "for a more thorough discussion of the listings" is not necessary when "confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination

---

[42] *Id.* at 536, 550, 1449.
[43] *Id.* at 715, 550, 1477.
[44] *Id.* at 549, 639, 666, 682, 690, 1450.
[45] *Id.* at 482, 484, 485, 549, 554, 609, 636, 638, 644, 646, 704, 713, 813, 1380, 1448, 1476.
[46] *See Clifton*, 79 F.3d at 1010.
[47] *Id*. at 1009–10.
[48] Brief of The Commissioner (Doc. #18) at 8 (explaining harmless error).

under review."[49]  In other words, it can appear elsewhere in his decision, but the ALJ still needs to use record evidence to explain why he determined that plaintiff did not satisfy step three.[50]

Here, the Commissioner does not assert that the ALJ provided this required explanation elsewhere in his decision.  Instead, the Commissioner essentially attempts to offer the explanation while on judicial review.[51]  The Tenth Circuit has made clear that the Commissioner cannot satisfy his step-three obligations by inserting the required discussion into his pleadings.[52]

## II.   Step Four

As the Court explained above, if plaintiff satisfies steps one and two but not three, the analysis proceeds to step four.[53]  At step four, the Commissioner determines whether plaintiff's impairments prevent her from doing work that she performed in the past.[54]  To make this determination, the Commissioner must make specific factual findings regarding plaintiff's abilities, including her RFC.[55]  To do so, the ALJ must give controlling weight to the medical opinion of a treating source if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your

---

[49] *Fischer-Ross*, 431 F.3d at 734 ("But where an ALJ provides detailed findings, thoroughly reviewed and upheld by the district court, that confirm rejection of the listings in a manner readily reviewable, requiring reversal would extend Clifton beyond its own rationale.").

[50] *See Clifton*, 79 F.3d at 1010 (ALJ must also "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").

[51] *Compare* Tr. 881–82 (concluding without further explanation that "there is no evidence of . . . motor loss accompanied by sensory or reflex loss"), *with* Brief of The Commissioner (Doc. #18) at 6–8 (detailing evidence regarding motor loss and discussing why it is insufficient).

[52] *See Clifton*, 79 F.3d at 1009–10 (absent ALJ findings that are supported by specific weighing of evidence, Court "cannot assess whether relevant evidence adequately supports the ALJ's conclusion that [plaintiff's] impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion"); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) (district court "may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself"); *see also Spicer v. Barnhart*, 64 F. App'x 173, 178 (10th Cir. 2003) (although "there may be substantial evidence from which the ALJ might conclude that plaintiff is not disabled after careful consideration of her additional impairment, we are not in a position to draw factual conclusions on behalf of the ALJ") (citations omitted).

[53] *Wilson*, 602 F.3d at 1139.

[54] *Id.*; 20 C.F.R. § 404.1520(f).

[55] *Stewart*, 2014 WL 5410240, at *6.

case record."[56]  If a treating source's medical opinion is not entitled to controlling weight, the ALJ must consider other factors, including the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, how much evidence supports the opinion, consistency with the record as a whole and the specialization of the treating source.[57]  In either circumstance, the ALJ must "always give good reasons" for the weight he gives to the treating source's medical opinion.[58]  These reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[59]

> Here, the ALJ determined at step four that plaintiff had the following RFC:
>
> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and or carry 20 pounds occasionally and 10 pounds frequently. She can walk or stand six hours out of an eight-hour workday.  She can sit for six hours out of an eight-hour workday.  The claimant can occasionally climb stairs, but never climb ropes, scaffolds or ladders.  She can occasionally balance, stoop, crouch, kneel or crawl and occasionally push and pull.  She is limited to frequent reaching with the right upper extremity, but no overhead reaching with the right upper extremity.  She must avoid prolonged exposure to vibrating machinery.  She is limited to simple, routine repetitive tasks with occasional interaction with co-workers and occasional interaction with the general public.  She retains the ability to adapt to changes in the work place on a basic level.[60]

Plaintiff asserts that substantial evidence does not support this RFC determination because the ALJ "failed to provide legitimate rationale for discounting" the medical opinions of Dr. Hopkins and Dr. Bartlett.[61]  The Court agrees with respect to Dr. Hopkins, but disagrees with respect to Dr. Bartlett.

---

[56] 20 C.F.R. § 404.1527(c)(2).
[57] *Id.* at § 404.1527(c)(2)–(6).
[58] *Id.*; *see Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).
[59] *Watkins*, 350 F.3d at 1300 (citations omitted).
[60] Tr. 883.
[61] Plaintiff's Brief in Support of A Social Security Appeal Submitted Pursuant To Local Rule 83.7.1 (Doc. #15) filed January 20, 2020 at 17.

Dr. Hopkins opined that plaintiff's impairments restricted her to jobs in which she could primarily sit.[62] The ALJ disagreed with Dr. Hopkins, concluding in two short sentences that he gave this opinion "little weight" because "[t]here is simply insufficient evidence of conditions that warrant limitations on standing and walking."[63]

This explanation is also inadequate. In rejecting Dr. Hopkins' opinion, the ALJ did not address any of the pertinent factors which the Court detailed above. Instead, he simply concluded that evidence did not support the medical opinion, leaving the Court to guess which evidence he considered and rejected.[64] This does not satisfy the ALJ's obligations at step four.[65] As the Court explained above, the Commissioner cannot do so by retroactively providing the required explanation while on judicial review.[66]

By contrast, the ALJ adequately addressed Dr. Bartlett's medical opinion. Dr. Bartlett opined that plaintiff's depression "could possibly limit her ability to attend a full-time occupational placement in a reliable and predictable manner."[67] The ALJ discussed Dr. Bartlett's conclusions

---

[62] Tr. 552 (plaintiff "requires primarily a sitting occupation with occasional requirements to stand and walk for 30 minutes period of time").

[63] *Id.* at 887.

[64] The Commissioner argues that even if the ALJ's explanation at step four was deficient, such error was harmless because "the ALJ discussed the relevant medical evidence throughout his decision and he was not required to reiterate this evidence again in the opinion context." Brief Of The Commissioner (Doc. #18) at 13. The Commissioner makes no effort, however, to identify where the ALJ did so. The Commissioner does not satisfy his obligation to explain why he gave certain weight to a treating physician's medical opinion by vaguely referencing "relevant medical evidence throughout his decision." *See Spicer*, 64 F. App'x at 178 (ALJ "is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence").

[65] *See Watkins*, 350 F.3d at 1300 (explanation must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight"); *see also Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (Because ALJ failed to "explain or identify what the claimed inconsistencies were between [the doctor's] opinion and the other substantial evidence in the record," his reasons for rejecting that opinion are not sufficiently specific to enable court to meaningfully review findings).

[66] *Compare* Tr. 887 (concluding without further explanation that "[t]here is simply insufficient evidence of conditions that warrant limitations on standing and walking."), *with* Brief Of The Commissioner (Doc. #18) at 10 (detailing evidence that purportedly undermines Dr. Hopkins' opinion); *see Grogan*, 399 F.3d at 1263 (district court "may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself"); *see also Spicer*, 64 F. App'x at 178 (Court is "not in a position to draw factual conclusions on behalf of the ALJ") (citations omitted).

[67] Tr. 1455–56.

at great length, and ultimately assigned "little weight" to the particularly speculative opinion that it was "possible" plaintiff could not predictably work full time.[68]  Accordingly, in relevant part, the ALJ determined that plaintiff "is limited to simple, routine repetitive tasks with occasional interaction with co-workers and occasional interaction with the general public" and that she "retains the ability to adapt to changes in the work place on a basic level."[69]

To arrive at this conclusion, the ALJ discussed Dr. Bartlett's observations that plaintiff had a driver's license and vehicle and drove herself to the appointment, and admitted that she could manage her own finances, groceries and meals and operate a computer, email and social media.[70] Moreover, the ALJ discussed Dr. Bartlett's findings that plaintiff could complete simple instructions and interact with the public, coworkers and supervisors.[71]  In addition, the ALJ discussed plaintiff's mental exam, in which Dr. Bartlett found that beyond a decreased range of emotional expression and a flat affect, her results were normal.[72]  Considering this evidence, the ALJ gave "little weight" to the opinion regarding plaintiff's "possible" inability to work in a predictable manner because Dr. Bartlett "fails to explain how he arrived at this limitation."[73]  To show that the ALJ's decision was too conclusory, plaintiff cherry-picks this last sentence, but entirely ignores the substantial discussion that occurred just before it.  Given the ALJ's thorough

---

[68] *Id.* at 890.
[69] *Id.* at 883.
[70] *Id.*
[71] *Id.*
[72] *Id.*
[73] *Id.* at 890.  With respect to Dr. Bartlett's opinion regarding plaintiff's "possible" inability to work in a predictable manner, the ALJ further concluded that "whether or not a claimant can work is a determination reserved to the commissioner." Tr. 890. Although the parties agree that the ALJ was wrong on this point, it is immaterial to the Court's analysis.  As the Court detailed above, the ALJ thoroughly evaluated the supporting evidence, and ultimately concluded that it did not support Dr. Bartlett's conclusory, unsupported opinion.  *See Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably declined to give controlling weight to treating physician opinion that was brief, conclusory and unsupported by objective medical findings).  Substantial evidence supports this determination.

examination of the evidence surrounding Dr. Bartlett's opinion, the Court finds that substantial evidence supports his determination on this issue.[74]

### III. Conclusion

The Court reverses and remands the Commissioner's decision for a proper step-three analysis and, if necessary, at step four a reevaluation of plaintiff's RFC which sufficiently addresses Dr. Hopkins' opinion.[75]

**IT IS THEREFORE ORDERED** that the judgment of the Commissioner is REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 4th day of May 2020 at Kansas City, Kansas.

s/ Julie A. Robinson
United States District Judge

---

[74] *See Biestek*, 139 S. Ct. at 1153 (Court must determine whether decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); *see also Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) (ALJ did not err by declining to give any weight to doctor's opinion that plaintiff "*probably* has difficulty with concentration and remembering because of attention problems") (emphasis in original).

[75] *See Higgins v. Barnhart*, 294 F. Supp. 2d 1206, 1215 (D. Kan. 2003) (remand is more appropriate when administrative record "has not been fully developed, or where the ALJ makes minimal findings that are not supported by adequate evaluation of the evidence in the record").